## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHERLI SHAMOON, Individually and On Behalf of All Others Similarly Situated,<br><br>                              Plaintiff,<br><br>                    v.<br><br>AKARI THERAPEUTICS PLC, GUR-ARYE YEHUDA ROSHWALB, and DOV ELEFANT,<br><br>                              Defendants. | **Case No.**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Sherli Shamoon ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Akari Therapeutics, plc ("Akari" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

1

**NATURE OF THE ACTION**

1.      This is a federal securities class action on behalf of a class consisting of all persons other than defendants who purchased or otherwise acquired Akari securities between March 30, 2017 and May 11, 2017, both dates inclusive (the "Class Period"), seeking to recover damages caused by defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.      Akari Therapeutics, Plc is a clinical-stage biopharmaceutical company focused on developing inhibitors of acute and chronic inflammation, specifically the complement system, the eicosanoid system, and the bioamine system for the treatment of rare and orphan diseases.

3.      Founded in 2004, the Company is headquartered in London, United Kingdom and operates as a subsidiary of RPC Pharma Limited.  Akari's stock trades on the NASDAQ under the ticker symbol "AKTX."

4.      On April 26, 2017, Edison Investment Research Ltd. ("Edison") issued a report titled "Akari's Coversin matches Soliris in Phase II" (the "Edison Report").

5.      On April 27, 2017, the Company disclosed that Edison had withdrawn its report because it contained material inaccuracies related to Akari's interim analysis of its Phase 2 PNH trial of Coversin. The Company further stated that investors should not rely upon any information contained in the Edison Report.

6.      Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) officers of the Company, including Akari's Chief Executive Officer ("CEO"), were involved in publishing false information about the Company, including false information about the Phase 2 PNH trial of

2

the Company's Coversin product; (ii) the Company lacked adequate checks and protections to prevent such behavior; and (iii) as a result of the foregoing, Akari's public statements were materially false and misleading at all relevant times.

7.      On May 11, 2017, Akari filed a Form 6-K with the SEC announcing that Akari had established an ad hoc special committee to review the involvement of Company personnel in preparing the inaccurate Edison Report. Furthermore, the Form 6-K disclosed that Dr. Gur Roshwalb, the Company's Chief Executive Officer ("CEO"), has been placed on administrative leave while the review is pending.

8.      On this news, the Company's American Depository Receipts ("ADR" or "share") price fell $2.46, or 21.41%, to close at $9.03 on May 12, 2017.

9.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

10.      The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

11.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and Section 27 of the Exchange Act.

12.      Venue is proper in this Judicial District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b). The Company's ADRs trade on the NASDAQ, located within this Judicial District.

13.     In connection with the acts, conduct and other wrongs alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

14.     Plaintiff, as set forth in the attached Certification, acquired Akari securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

15.     Defendant Akari is headquartered in New York, New York, with principal executive offices located at 24 West 40th Street, 8th Floor, New York, New York 10018.  Akari's shares trade on the NASDAQ under the ticker symbol "AKTX."

16.     Defendant Gur-Arye Yehuda Roshwalb ("Roshwalb") has served at all relevant times as the Company's CEO and Director.

17.     Defendant Dov Elefant ("Elefant") has served at all relevant times as the Company's Chief Financial Officer ("CFO").

18.     The defendants referenced above in ¶¶ 16-17 are sometimes referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

19.     Akari Therapeutics, Plc is a clinical-stage biopharmaceutical company focused on developing inhibitors of acute and chronic inflammation, specifically the complement system, the eicosanoid system, and the bioamine system for the treatment of rare and orphan diseases.

### Materially False and Misleading Statements Issued During the Class Period

20.     The Class Period begins on March 30, 2017, when the Company issued a press release entitled "Akari Therapeutics Announces FDA Fast Track Designation For Coversin." Therein, the Company, in relevant part, stated:

> NEW YORK and LONDON, March 30, 2017 (GLOBE NEWSWIRE) -- Akari Therapeutics (NASDAQ:AKTX), an emerging growth, clinical-stage biopharmaceutical company, announced today that the US Food and Drug Administration (FDA) has granted Fast Track designation for Coversin™ for treatment of paroxysmal nocturnal hemoglobinuria (PNH) in patients who have polymorphisms conferring eculizumab resistance. Coversin™ is a secondgeneration complement inhibitor that acts on complement component-C5, preventing the release of C5a and the formation of C5b–9 (also known as the membrane attack complex or MAC), and independently also inhibits LTB4 activity.
>
> "We are very proud of the continued advancement of our Coversin program for the treatment of PNH in patients with or without polymorphisms," said Dr. Gur Roshwalb, Chief Executive Officer of Akari Therapeutics. "The FDA fast track designation recognizes the unmet need in patients with PNH who cannot be treated with the current standard of care due to polymorphisms."
>
> Akari is evaluating Coversin in two Phase 2 clinical trials. The first Phase 2 trial is evaluating Coversin™ in patients with PNH who have never received a complement blocking therapy. Interim results from this ongoing Phase 2 trial will be presented at the recently announced Research and Development Day to be held on April 24, 2017 in New York. The second Phase 2 trial is evaluating Coversin in patients with PNH and C5 polymorphisms resistant to eculizumab. One patient has been enrolled in this trial and has demonstrated significant LDH reduction and complete complement blockade with self-administered subcutaneous Coversin™ for over one year.

21.     On April 24, 2017, the Company issued a press release entitled "Akari Therapeutics Demonstrates Positive Response with Coversin in Ongoing Phase 2 PNH Trial and in Additional Clinical Targets." Therein, the Company, in relevant part, stated:

> NEW YORK and LONDON, April 24, 2017 (GLOBE NEWSWIRE) -- Akari Therapeutics (NASDAQ: AKTX), an emerging growth, clinical-stage biopharmaceutical company, announced that it will present data from an interim analysis of its ongoing Phase 2 trial of Coversin in paroxysmal nocturnal hemoglobinuria (PNH), as well as preclinical data for additional indications and other opportunities, at today's Research and Development Day.
>
> **Positive Interim Phase 2 data in PNH**

In this 90 day, open label Phase 2 trial conducted at five centers in the EU, five patients with PNH who had not received prior anti-complement therapy were enrolled and treated with Coversin self-administered subcutaneous injections twice a day for approximately the first month and then switched to once daily injections. The primary endpoint in this trial is reduction in serum LDH to ≤1.8 X ULN or 500 I U/L whichever is the lower from day 1 (pre-dose) to day 28. Secondary endpoints are LDH at days 60 and 90, hemoglobin, CH50, quality of life, and transfusion independence. The objectives of our Phase 2 study are to validate the safety and efficacy of Coversin, confirm convenience of our dosing regimen, and study dose ranging to identify the correct treatment dose in advance of Phase 3.

The 4 patients who remain on Coversin are characterized, to date, by:

- Symptom free

- LDH reductions 1.3, 1.4, 1.5 and 1.8X ULN

- No transfusions (2 of the 4 patients received transfusions in the 3 months prior to the study)

- CH50 below level of quantification (from day 1)

- Once daily subcutaneous self-administration

- No neutralizing antibodies

- No serious adverse events (SAEs)

In this dose ranging Phase 2 study, the protocol allowed for patients to be updosed from the 30mg starting dose. Of the 4 patients continuing on Coversin: the first patient's LDH went from 2.4X ULN at baseline to 2.1X ULN on the starting dose, was updosed to 45 mg and achieved a reduction to 1.3X ULN on day 28 and remains on 45mg once daily injections; the second patient with an LDH of 7.5X ULN at baseline, achieved a reduction to 1.4X ULN on day 28 with the starting dose, and remains on 30mg once daily injections; the third patient's LDH went from 3.3X ULN at baseline to 2.4X ULN on the starting dose, was updosed to 45 mg and achieved a reduction to 1.5X ULN on day 60 and remains on 45mg once daily injections; and the fourth patient who just reached the 6 week mark for this interim analysis achieved an LDH reduction from 5.6 X ULN at baseline to 1.8X ULN on day 40 on the starting dose, and was updosed to 45mg on day 48 and continues on once daily injections. All 4 patients achieved on day 1 and throughout the trial a CH50 below the lower limit of quantification ("<LLQ").

A fifth patient with an LDH of 3.7 X ULN at baseline achieved the primary endpoint at day 14, but was withdrawn from the trial at day 43 due to a suspected co-morbidity unrelated to treatment, which would have excluded the patient from

the trial protocol. While on Coversin, the patient met the primary endpoint (day 14), and achieved and maintained a CH50 <LLQ (day 1) but clinical response fluctuated and did not stabilize. After withdrawal, the patient switched to eculizumab. On eculizumab, LDH decreased to below 1.5X ULN and the patient experienced other clinical complications.

As reported previously, an eculizumab-resistant PNH patient had been under treatment with subcutaneous Coversin for over 14 months under an approved clinical protocol. The patient continues to self-administer Coversin and continues to demonstrate complete complement inhibition without any change in dose.  The patient's most recent reported LDH was below 1.3 X ULN. Further, there have been no signs of neutralizing antibodies.

All patients are comfortable with self-dosing and by the end of May, we plan to have the four continuing patients from this Phase 2 and the one patient from the eculizumab resistant protocol on long term treatment in our long term open label safety trial. Akari is planning to initiate its Phase 3 program in PNH in the fourth quarter of 2017 and anticipates initial Phase 3 data 1Q2019.

22.    On April 26, 2017, Edison Investment Research Ltd. issued a report titled "Akari's Coversin matches Soliris in Phase II", advising investors of the results of the Phase 2 PNH trial of Coversin.

23.    On April 27, 2017, the Company disclosed that Edison had withdrawn its report because it contained material inaccuracies related to Akari's interim analysis of its Phase 2 PNH trial of Coversin. The Company further stated that investors should not rely upon any information contained in the Edison Report.  In whole, the Company stated:

Edison Investment Research Ltd. has withdrawn its report issued yesterday titled "Akari's Coversin matches Soliris in Phase II" (the "Edison Report") because it contains material inaccuracies, including without limitation, with respect to Akari's recently announced interim analysis of its ongoing Phase 2 PNH trial of Coversin. Investors should not rely upon any information contained in the Edison Report and instead should refer to Akari's press release issued on April 24, 2017 that discusses the interim analysis of its ongoing Phase 2 PNH trial and other matters.

24.    The statements referenced in ¶¶ 20-23 were materially false and misleading because defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies.

7

Specifically, defendants made false and/or misleading statements and/or failed to disclose that: (i) officers of the Company, including Akari's CEO, were involved in publishing false information about the Company, including false information about the Phase 2 PNH trial of the Company's Coversin product; (ii) the Company lacked adequate checks and protections to prevent such behavior; and (iii) as a result of the foregoing, Akari's public statements were materially false and misleading at all relevant times.

## The Truth Emerges

25.    On May 11, 2017, the Company disclosed that its Board of Directors had established an ad hoc special committee of the Board to review the involvement, if any, of Company personnel with the Edison Report. The Company also disclosed that Defendant Gur Roshwalb, the Company's CEO, was placed on administrative leave. In whole, the Company stated:

> As previously reported by Akari Therapeutics, Plc (the "Company"), on April 27, 2017, the Company issued a press release stating that Edison Investment Research Ltd. has withdrawn its report issued April 26, 2017 titled "Akari's Coversin matches Soliris in Phase II" (the "Edison Report") because it contains material inaccuracies, including without limitation, with respect to Akari's recently announced interim analysis of its ongoing Phase 2 PNH trial of Coversin. Investors were cautioned not to rely upon any information contained in the Edison Report and instead were directed to Akari's press release issued on April 24, 2017 that discusses the interim analysis of its ongoing Phase 2 PNH trial and other matters. The Company's Board of Directors has established an ad hoc special committee of the Board to review the involvement, if any, of Company personnel with the Edison Report. While that review is pending, Dr. Gur Roshwalb, the Company's Chief Executive Officer, has been placed on administrative leave and Dr. Ray Prudo in his role as Executive Chairman is temporarily assuming Dr. Roshwalb's duties in his absence.

26.    On this news, the Company's share price fell $2.46, or 21.41%, to close at $9.03 on May 12, 2017.

27.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

28.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Akari securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

29.    The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Akari securities were actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Akari or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

30.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

31.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

32.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by defendants' acts as alleged herein;

- whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Akari;

- whether the Individual Defendants caused Akari to issue false and misleading financial statements during the Class Period;

- whether defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Akari securities during the Class Period were artificially inflated because of the defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

33.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

34.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Akari securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Akari securities between the time the defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

35.    Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

36.    Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

### COUNT I

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

37.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

38.    This Count is asserted against defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

39.     During the Class Period, defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Akari securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Akari securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

40.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Akari securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Akari's finances and business prospects.

41.     By virtue of their positions at Akari, defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, defendants

acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to defendants. Said acts and omissions of defendants were committed willfully or with reckless disregard for the truth. In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

42.    Information showing that defendants acted knowingly or with reckless disregard for the truth is peculiarly within defendants' knowledge and control. As the senior managers and/or directors of Akari, the Individual Defendants had knowledge of the details of Akari's internal affairs.

43.    The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Akari. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Akari's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Akari securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Akari's business and financial condition which were concealed by defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Akari securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by defendants, and were damaged thereby.

44.    During the Class Period, Akari securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Akari securities at prices artificially inflated by defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Akari securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Akari securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

45.    By reason of the conduct alleged herein, defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

46.    As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)**

47.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

48.    During the Class Period, the Individual Defendants participated in the operation and management of Akari, and conducted and participated, directly and indirectly, in the conduct of Akari's business affairs.  Because of their senior positions, they knew the adverse non-public information about Akari's misstatement of income and expenses and false financial statements.

49.    As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Akari's financial condition and results of operations, and to correct promptly any public statements issued by Akari which had become materially false or misleading.

50.    Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Akari disseminated in the marketplace during the Class Period concerning Akari's results of operations.   Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Akari to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Akari within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Akari securities.

51.    Each of the Individual Defendants, therefore, acted as a controlling person of Akari.  By reason of their senior management positions and/or being directors of Akari, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Akari to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of Akari and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

52.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Akari.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.    Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.    Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.    Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.    Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: May 19, 2017

Respectfully submitted,

**POMERANTZ LLP**

*/s/ Jeremy A. Lieberman*

Jeremy A. Lieberman
J. Alexander Hood II
Hui M. Chang
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:  (212) 661-8665
Email:  jalieberman@pomlaw.com
            ahood@pomlaw.com

hchang@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
Facsimile:  (312) 377-1184
Email:  pdahlstrom@pomlaw.com

**HOLZER & HOLZER, LLC**
Corey D. Holzer
Marshall P. Dees
1200 Ashwood Parkway
Suite 410
Atlanta, Georgia 30338
Telephone:  (770) 392-0090
Facsimile:  (770) 392-0029
Email:  cholzer@holzerlaw.com
        mdees@holzerlaw.com

*Attorneys for Plaintiff*

## CERTIFICATION OF NAMED PLAINTIFF
## <u>PURSUANT TO FEDERAL SECURITIES LAWS</u>

The undersigned declares, as to the claims asserted under the federal securities laws, that:

Plaintiff has reviewed the initial complaint filed in this action.

Plaintiff did not purchase and/or acquire the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in any private action under the federal securities laws.

Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary. I understand that this is not a claim form, and that my ability to share in any recovery as a member of the class is not dependent upon execution of this Plaintiff Certification.

Plaintiff's transactions in the security that is the subject of this action during the Class Period are as follows **- List additional transactions on Schedule A, if necessary**:

Purchases:

| Ticker of Company | Date(s) Purchased | # Shares Purchased | Cost/Share |
|---|---|---|---|
| AKTS | 04/06/2017 | 100 | 15.085 |

Sales:

| Ticker of Company | Date(s) Sold | # Shares Sold | Proceeds/Share |
|---|---|---|---|
| | | | |

During the three (3) years prior to the date of this certification, Plaintiff has not sought to serve or served as a class representative in an action filed under the federal securities laws except for the following (if any):

no

Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this __12__ day of __May__, 2017 in ____Thousand Oaks____, ____CA____.
                                                               City                State

(Signature) X ___*Sherli Shamoon*___

DocuSigned by:
6FFDD473A42446E...

(Print Name) ____Sherli Shamoon____

**AKARI THERAPEUTICS, PLC (AKTX)**                                    **Shamoon, Sherli**

## LIST OF PURCHASES AND SALES

| DATE | PURCHASE OR SALE | NUMBER OF SHARES/UNITS | PRICE PER SHARES/UNITS |
|------|------------------|------------------------|------------------------|
| 4/6/2017 | Purchase | 100 | $15.0850 |